UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.** CV 23-3007-MWF (ASx)                **Date:** **June 27, 2023**

Title: Michelle Valladolid v. Memorial Health Services

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                        Court Reporter:
Rita Sanchez                         Not Reported

Attorneys Present for Plaintiff:     Attorneys Present for Defendant:
None Present                         None Present

**Proceedings (In Chambers):**   ORDER RE: PLAINTIFF'S MOTION FOR
                                 REMAND TO STATE COURT [45]

Before the Court is the Motion to Remand (the "Motion") filed by Plaintiff Michelle Valladolid on May 17, 2023.  (Docket No. 15).  Defendant Memorial Health Services filed an Opposition and unopposed Request for Judicial Notice on June 5, 2023.  (Docket Nos. 16 and 17).  Plaintiff filed a Reply June 12, 2023.  (Docket No. 18).

The Court has read and considered the papers filed on the Motion and held a hearing on **June 26, 2023**.

The Motion is **GRANTED**.  Defendant fails to demonstrate that the Complaint concerns conduct it engaged in while "acting under" a federal officer or agency for purposes of the federal-officer removal statute, and therefore removal under 28 U.S.C. § 1442(a)) is improper.  Accordingly, the Court lacks subject-matter jurisdiction over this non-diverse action containing purely state-law claims and must **REMAND** this action to the Los Angeles Superior Court.

## I.     BACKGROUND

Plaintiff commenced this action in the Los Angeles County Superior Court on March 7, 2023.  (Notice of Removal ("NOR"), Ex. A (Complaint) (Docket No. 1)).  Plaintiff brings three state-law claims against Defendant for (1) violations of the

---

**CIVIL MINUTES—GENERAL**                                               **1**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023

Title:  Michelle Valladolid v. Memorial Health Services

California Invasion of Privacy Act (Cal. Pen. Code § 631); (2) violations of the Confidentiality of Medical Information Act (Cal. Civ. Code § 56.10); and (3) invasion of privacy under the California Constitution.  On April 20, 2023, Defendant removed this action to the federal district court pursuant to the federal-officer removal statute (28 U.S.C. § 1442(a)).  Now, Plaintiff moves to remand based on lack of subject-matter jurisdiction.

The Court first summarizes the allegations in the Complaint before noting the relevant facts Defendant advances in support of removal.

A.      **Allegations in the Complaint**

Plaintiff filed her class action Complaint on behalf of herself and all others similarly situated who have used and accessed Defendant's website, www.memorialcare.org (the "Website").  (Complaint ¶ 1).  Defendant is a nonprofit health system that consists of four hospitals, two medical groups, surgical centers, and other facilities.  (*Id.* ¶¶ 6, 19).  Defendant owns and operates the Website, which offers a patient portal through which patients may obtain test results, communicate with their doctors, and check on medical appointments, among other things.  (*See id.* ¶¶ 6, 8).

Plaintiff routinely accessed Defendant's patient portal for numerous years.  (*Id.* ¶ 8).  Plaintiff also has an active Facebook account that she routinely accesses.  (*Id.* ¶ 9).  Plaintiff alleges that Defendant has assisted Facebook in intercepting Plaintiff's communications on the Website's patient portal, which consist of protected and personally identifiable health information.  (*Id.* ¶ 10).  Specifically, Plaintiff alleges that Defendant has implemented Facebook's Tracking Pixel ("Facebook Pixel"), which is a piece of code that advertisers, such as Defendant, can integrate onto their websites.  (*Id.* ¶¶ 27, 30).

When a user accesses a website with Facebook Pixel integrated, the users' activities on those websites are sent to Facebook's servers through a highly-technical series of events.  (*See id.* ¶¶ 21-42).  For example, if a patient were to access women's

CIVIL MINUTES—GENERAL                                                   2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023

Title:  Michelle Valladolid v. Memorial Health Services

care information on Defendant's Website, because Facebook Pixel is integrated into the Website, a record of that activity, along with cookie information that identifies the user, is sent via automated code to Facebook's servers.  (*Id*. ¶¶ 28, 32-36).  Defendant then directs Facebook to use such information to develop specific audiences that are targeted with specific ads regarding Defendant's services while they browse Facebook. (*Id*. ¶ 24).

Plaintiff contends that Defendant's use of Facebook Pixel allowed it to improperly share her personal and private health information with Facebook for purposes of advertising without her consent or knowledge.  (*Id*. ¶ 44).  Based on the above allegations, Plaintiff brings three state law privacy claims against Defendant.

## B.   Relevant facts concerning the Meaningful Use Program

Defendant filed a Request for Judicial Notice ("RJN") in support of its Opposition.  (Docket No. 17).  Because the RJN is unopposed and because Defendant is entitled to support its claimed jurisdiction with evidence, the Court has considered the materials in the RJN.  The RJN is therefore **GRANTED**.

Defendant contends that Plaintiff's allegations challenge its efforts to optimize and monitor traffic on its Website.  (Opposition at 8).  Defendant argues it optimized and monitored its Website in furtherance of its efforts to assist a federal program aimed at creating a unified system for patient electronic health records and to optimize patient access to their own health records, and therefore it is entitled to removal under the federal-officer removal statute.  (*Id*. at 9).  The NOR and Opposition describe this federal program in some detail and the Court summarizes the relevant facts regarding the program as follows:

In 2004, President George W. Bush established the National Health Information Technology Coordinator ("National Coordinator") by Executive Order.  (*Id*.) (citing Exec. Order No. 13,335, 69 Fed. Reg. 24,059 (Apr. 27, 2004)).  The purpose of the Executive Order was to spark a "nationwide implementation of interoperable health

_____

**CIVIL MINUTES—GENERAL**                                            **3**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023
Title:  Michelle Valladolid v. Memorial Health Services

information technology in both the public and private health care sectors."  (*Id.*).
Through the Executive Order, President Bush further ordered that the National
Coordinator "shall develop, maintain, and direct the implementation of a strategic plan
to guide the nationwide implementation of interoperable health information technology
in both the public and private health care sectors that will reduce medical errors,
improve quality, and produce greater value for health care expenditures."  (*Id.*).

Then, in 2009, Congress passed, as part of The American Recovery &
Reinvestment Act, the Health Information Technology for Economic and Clinical
Health Act ("HITECH Act").  (Motion at 2) (citing 42 U.S.C § 300jj-11(a)).  The
HITECH Act, in turn, codified the Office of the National Coordinator, which is a staff
division of the Department of Health and Human Services ("DHHS").  The HITECH
Act gave the National Coordinator much of the same responsibilities and objectives as
the 2004 Executive Order.  The HITECH Act also appropriated funds for DHHS and
the Centers of Medicare and Medicaid Services ("CMS"), to invest in the
"infrastructure necessary to allow for and promote the electronic exchange and use of
health information for each individual in the United States."  42 U.S.C. § 300jj–31.  In
that vein, the Act authorized the National Coordinator to develop what has come to be
known as the "Meaningful Use Program."  42 U.S.C. §§ 1395w-4(o), 1395ww(n); 42
C.F.R. § 495.2.

Under the Meaningful Use Program, eligible healthcare providers, such as
Defendant, receive incentive payments from DHHS and CMS if they demonstrate
"meaningful use" of certified electronic health record ("EHR") technology.  42 U.S.C.
§§ 1395w-4(o), 1395ww(n); 42 C.F.R. § 495.2.  In order to receive payment, providers
must attest to the National Coordinator and CMS on their progress with respect to the
criteria for payment, including their patients' engagement with their online records.
(Motion at 12).  Defendant explains that under the HITECH Act, "incentive payments
are phased out over time and replaced by financial penalties for physicians and
hospitals that are not using certified EHRs."  (Motion at 11) (citing C. Stephen
Redhead, *The Health Information Technology for Economic and Clinical Health*
(HITECH) Act, at pg. 2 (CONG. RES. SERV. Apr. 27, 2009)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023
Title:  Michelle Valladolid v. Memorial Health Services

The Meaningful Use Program is structured in successive stages, with each stage involving additional or enhanced criteria in exchange for greater incentive payments. 75 Fed. Reg. 44,321–22; 42 C.F.R. §§ 495.20–495.24.  An example of one of the criterion for payment is giving patients the ability to access their health care records online, which providers may achieve by creating a patient portal.  (*See* Opposition at 12-13).  Other criteria include increasing patients' awareness and use of their records. (*Id.* at 13).

The National Coordinator has published guidance for private providers to follow to satisfy the Program's criteria.  (NOR ¶ 29).  Additionally, CMS has created its own patient portal as a model for private providers to follow.  Defendant contends that the CMS model relies on third-party marketers, like Google and Facebook, to optimize patient engagement.  (*Id.* ¶ 30).

Defendant contends that it was among the first health systems in the U.S. to implement an Electronic Medical Records ("EMR") system, and it has actively participated in the Meaningful Use Program largely since the Program's inception. (NOR ¶ 38).  Defendant maintains that the patient portal on its Website (and Defendant's promotion thereof) is a direct result of the federal initiative to make health care records available to patients online.  (*Id.* ¶ 31).  Defendant alleges that since leveraging the patient portal and other electronic tools for exchanging health information, it has continually met the Meaningful Use Program's criteria, and has thus received incentive payments from the Government.  (*Id.* ¶ 10).

Defendant argues that because the Complaint concerns the technology it has implemented on its Website in an effort to meet the criteria set forth by the Meaningful Use Program, it has demonstrated that it was "acting under" the federal Government (i.e., the National Coordinator) in engaging in the conduct alleged in the Complaint. Thereby, Defendant contends it is entitled to remove this action despite the lack of federal-question or diversity jurisdiction.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                          Date:  June 27, 2023
Title:  Michelle Valladolid v. Memorial Health Services

## II.    LEGAL STANDARD

A removing defendant bears the burden of establishing that removal is proper.
*See Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (per curiam)
(noting the "longstanding, near-canonical rule that the burden on removal rests with the
removing defendant").

Under § 1442(a)(1), a civil action filed in state court may be removed to a
federal district court if the action was filed against or directed to the "United States or
any agency thereof or any officer (or any person acting under that officer) of the
United States or of any agency thereof, in an official or individual capacity, for or
relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).  To invoke the
statute, [a defendant] must show the following three elements are met: (1) "it is a
'person' within the meaning of the statute, (2) a causal nexus exists between [the]
plaintiff['s] claims and the actions [the defendant] took pursuant to a federal officer's
direction, and (3) it has a 'colorable' federal defense to [the] plaintiff['s] claims.
*Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citing *Durham v. Lockheed
Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).

Section 1442(a) is intended to protect federal officers from interference with
their official duties through state-court litigation.  Q*uinto v. Regents of Univ. of
California*, No. CV 22-04429-JD, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1, 2023)
(citing *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981)).  The statute "responds to
three general concerns: (1) 'State-court proceedings may reflect "local prejudice"
against unpopular federal laws or federal officials'; (2) 'States hostile to the Federal
Government may impede' federal law; and (3) 'States may deprive federal officials of
a federal forum in which to assert federal immunity defenses.' " *Id.* (citing *Fidelitad,
Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018)).  Section 1442 is liberally
construed to address these issues but is not limitless in scope.  *See id.*  (indirectly citing
*Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023
Title:  Michelle Valladolid v. Memorial Health Services

"Like plaintiffs pleading subject-matter jurisdiction under Rule 8(a)(1), a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).  A plaintiff's motion to remand for want of jurisdiction is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)."  *Id.*  "As under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack."  *Id.*

A "facial" attack accepts the truth of the defendant's allegations in the notice of removal but "asserts that they are insufficient on their face to invoke federal jurisdiction."  *Id.* at 1121 (internal citation omitted).  A "factual attack contests the truth of the [defendant's] factual allegations," requiring the defendant to come forward with "competent proof" to support its allegations, "under the same evidentiary standard that governs in the summary judgment context."  *Id.*

Here, Plaintiff primarily advances a facial attack to Defendant's jurisdictional allegations.

## III.  **DISCUSSION**

The parties do not dispute that Defendant qualifies as a "person" within the meaning of § 1442(a)(1) or that Defendant has a colorable defense.  However, Plaintiff argues that the last element of the federal officer removal statute is not met, namely that Defendant fails to establish that it was acting under a federal officer, and that those actions bear a causal nexus to Plaintiff's claims.  Because the Court concludes that Defendant has not established that it was "acting under" a federal officer in carrying out the conduct alleged in the Complaint, the Court does not reach the issue of causation.

---

**CIVIL MINUTES—GENERAL**                                          7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023

Title:  Michelle Valladolid v. Memorial Health Services

### A.    Synthesis of Relevant Case Law

The Ninth Circuit has identified several factors that are relevant to assessing whether a private person is acting pursuant to a federal officer's directions.  These factors include whether the person: (1) "is acting on behalf of the officer in a manner akin to an agency relationship;" (2) "is subject to the officer's close direction;" (3) "is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm;" and (4) is engaged in "activity [that] is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances."  *Quinto*, 2023 WL 1448050, at *2 (citing *Cnty. of San Mateo v. Chevron Corp*., 32 F.4th 733, 756-57 (9th Cir. 2022) (internal quotations and citations omitted)).  To be "acting under" a federal officer or agency, the private person or firm must be involved in "an effort to ***assist***, or to help ***carry out***, the duties or tasks of the federal superior."  *Watson*, 551 U.S. at 152 (emphasis in original).  But "the help or assistance necessary to bring a private person [or firm] within the scope of the statute does not include simply ***complying*** with the law."  *Id.* (emphasis in original).  In other words, "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone."  *Id.* at 153.  To demonstrate that the conduct goes beyond simple compliance with the law, the removing defendant must show that the relevant conduct "helps officers fulfill [] basic governmental tasks" and that in the absence of the private firm's conduct, "the Government itself would have [] to perform" such a task.  *Id.* at 153-154.

While it does not appear as though binding authority addresses whether firms implementing the Meaningful Use Program in exchange for incentive payments from the Government are "acting under" a federal agency, several district courts have considered the same issue and the majority have concluded that such firms are not "acting under" a federal agency for purposes of the removal statute.  *See, e.g., Doe v. Torrance Mem'l Med. Ctr*., No. CV 23-01237-DSF (JPRx), 2023 WL 2916548, at *3 (C.D. Cal. Apr. 12, 2023) (remanding case after concluding that defendant's participation in the Meaningful Use Program did not confer jurisdiction under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                Date:  June 27, 2023

Title:  Michelle Valladolid v. Memorial Health Services

federal officer removal statute); *Crouch v. Saint Agnes Med. Ctr.*, No. CV 22-01527-ADA-EPG, 2023 WL 3007408, at *6 (E.D. Cal. Apr. 19, 2023) (same); *Heard v. Torrance Mem'l Med. Ctr.*, No. CV 22-09466-DSF (JPRx), 2023 WL 2475544, at *3 (same); *Quinto v. Regents of Univ. of California*, No. CV 22-04429-JD, 2023 WL 1448050, at *3 (N.D. Cal. Feb. 1, 2023) (same); *Doe, I v. BJC Health Sys.*, No. 4:22 CV 919 RWS, 2023 WL 369427, at *5  (E.D. Mo. Jan. 10, 2023) (same); *Doe v. Hoag Mem'l Presbyterian Hosp.*, No. SA CV 23-00444-CJC (ADSx), 2023 WL 3197716, at *3 (C.D. Cal. May 2, 2023) (same).

However, Defendant identifies at least two out-of-circuit district courts that have concluded otherwise.  *See Doe I v. UPMC*, No. CV 20-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc*., No. CV 20-1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020) (adopting without analysis *UPMC's* conclusion).

The courts that have concluded that the federal-officer removal statute does not apply to firms implementing the Meaningful Use Program have determined that "receiving incentive payments for acting in a way that promotes a broad federal interest — in an area outside the traditional responsibility of the federal government — is not the same as being contracted to carry out, or assist with, a basic governmental duty."  *See Quinto*, 2023 WL 1448050, at *2; *see also Crouch*, 2023 WL 3007408, at *6 ("Defendants voluntary participation in a program to receive incentive payments, albeit subject to Government requirements, does not transform Defendant's private conduct into federal conduct.").

On the other hand, the two courts that have concluded otherwise have emphasized the fact that the entities implementing the Meaningful Use Program receive payments from the Government, which the courts reasoned makes them more like government contractors than regulated entities.  *See UPMC*, 2020 WL 4381675, at *6 ("The fact that the government offers payment in exchange for UPMC's voluntary participation in implementing a nationwide EHR network shows the relationship between UPMC and DHHS is less like the regulator-regulated relationship in *Watson*

---

**CIVIL MINUTES—GENERAL**                                        **9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023

Title:  Michelle Valladolid v. Memorial Health Services

and more like the government contractor relationship[.]"); *see also ProMedica*, 2020 WL 7705627, at *2 (citing *UPMC* with approval).

Having independently reviewed the case law and facts set forth by Defendant, this Court joins the majority of district courts and concludes that implementing the Meaningful Use Program is insufficient to establish that Defendant was "acting under" a federal agency, and therefore removal is improper.

It appears to the Court that the four factors identified by the Ninth Circuit as relevant to the "acting under" analysis can be further condensed into two general requirements, both of which appear to be necessary (at least to some degree) to invoke the officer-removal statute.  Those requirements are as follows: (1) that the Government maintains significant control and supervision over the private defendant's conduct and (2) that the private firm's conduct is aimed at carrying out or assisting the Government to perform a fundamental or statutorily proscribed duty or task. Underlying both requirements is the essential question of whether the underlying purpose of the removal statute — the protection of federal officers (and those acting under such officers) from state court prejudice against enforcement of federal law — would be served by allowing the relevant defendant to remove an action against it to federal court.  *See Watson*, 551 U.S. at 147-49 (providing an overview of the history and purpose of the removal statute).

This takeaway (i.e., that the means and ends of the private firm's conduct must be controlled by and in service of the Government) emerges from a review of two lines of cases:

First, the classic government-contractor cases make clear that even if the Government is paying a private actor to perform a task, absent substantial Government control and supervision, just performing certain obligations in exchange for payment alone is insufficient to invoke the statute.  *See Mays v. City of Flint, Mich*., 871 F.3d 437, 444–45 (6th Cir. 2017) ("[W]e conclude that the receipt of federal funding alone cannot establish a delegation of legal authority because finding such a delegation on

_____

**CIVIL MINUTES—GENERAL**                                           **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023
Title:  Michelle Valladolid v. Memorial Health Services

that basis is way beyond the reasoning of *Watson* and would allow myriad state agencies [and private actors] to invoke federal-officer removal.").

        Rather, the relevant government contract must create a ***subordinate*** relationship in which the Government maintains significant control and supervision over the means used to carry out the obligations imposed by the contract.  *See Watson*, 551 U.S. at 151 ("[T]he word "under" must refer to what has been described as a relationship that involves "acting in a certain capacity, considered in relation to one holding a superior position or office.");  *see also Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 725, 729 (9th Cir. 2015) (concluding that the removal statute did not apply to a government contractor acting on the Government's behalf given the private defendant was "not acting under direct orders or comprehensive and detailed regulations of the government" but instead acted pursuant to its own "discretion" under the contractual terms);  *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1109 (9th Cir. 2022) (concluding that an energy company who had contracted with the Navy regarding oil production could not invoke the officer-removal statute because the agreement gave the defendant "general direction—not 'unusually close' supervision").

        However, the second line of cases, which involve highly-regulated private entities, make equally clear that Government control and supervision, on its own, is likewise insufficient to invoke the statute.  *See Watson*, 551 U.S. at 153 (holding that a "private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official'");  *see also Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 685 (2022) ("Without more than government regulations and recommendations, [the nursing home] has failed to establish that it was 'acting under' a federal official[.]").

        Instead, as the Supreme Court explained in *Watson*, the private firm must show that the relevant conduct is done in service of the ***Government's*** ends by "help[ing] officers fulfill other basic governmental tasks" and to "perform[] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform."  *See Watson*, 551 U.S. at 153.  In contexts where the private firm is merely

CIVIL MINUTES—GENERAL                                                    11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-3007-MWF (ASx)                    Date: June 27, 2023

Title: Michelle Valladolid v. Memorial Health Services

adhering to Government regulations, however, the firms may be furthering broad federal interests that underlie the regulations, but ultimately the firms are not carrying out any task of the Government. Instead, regulated firms are merely complying with the law in furtherance of their own objectives.

Therefore, the government-contractor and regulator-regulated cases establish that in order for a private firm to invoke the removal statute, generally they must demonstrate **both** that they are operating as a subordinate and pursuant to the Government's directions **and** that their conduct is in furtherance of a traditional or statutory governmental duty or task.

Here Defendant has not established either requirement.

B.    **Application of Case Law to these Facts**

***Government Subjection, Control, and Supervision***:  The first two factors articulated by the Ninth Circuit (i.e., whether the relationship is "akin to an agency relationship" and/or the private firm "is subject to the officer's close direction") both ultimately speak to whether the relationship is one in which the Government is exercising its control as a superior to the private firm.

Plaintiff argues that Defendant is not acting under a federal officer or agency by participating in a voluntary incentive program because Defendant has no compelled obligations to the Government, contractual or otherwise. (Motion at 5).  In the Opposition, Defendant tends to conflate the Government control requirement with the requirement that the ends served be those of the Government.  But ultimately Defendant appears to argue that it was under sufficient Government control and supervision because the "Meaningful Use Program prescribes a specific framework and guidelines for providers to follow, and the federal government monitored compliance with the program" through the "detailed reports on patient portal activities" that it had to submit to the Government to receive payment.  (Opposition at 20).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** **CV 23-3007-MWF (ASx)**                **Date:** **June 27, 2023**
Title: Michelle Valladolid v. Memorial Health Services

But the Opposition fails to ever directly deal with the fact that participation in the Meaningful Use Program is optional. While Defendant repeatedly argues that it is akin to a government contractor based on its receipt of payment from the Government, the key distinction between itself and a contractor is of course the fact that unlike a contractor, Defendant is under no binding obligation to perform any task – and the extent of a defendant's obligations to the Government is a key factor in determining whether the removal statute applies. In other words, the distinction here is not without a difference. It simply cannot be said that the Meaningful Use Program creates a subordinate relationship, where the National Coordinator serves as Defendant's superior. That fact alone appears dispositive. *See Watson*, 551 U.S. at 151 ("[T]he word "under" must refer to what has been described as a relationship that involves "***acting in a certain capacity***, considered in relation to one holding a ***superior position or office***.") (emphasis added).

Defendant contends that "*Watson* clarified that the types of relationships that may trigger the federal[-]officer removal statute include, but are not limited to, those established by contract, ***payment***, employer-employee relationships, and agent-principal arrangements." (Opposition at 15) (citing 551 U.S. at 156) (emphasis added by Defendant). However, read in context, it is clear that the *Watson* Court merely suggested that payment is one piece of evidence that may support a conclusion that the private defendant is working on the "Government agency's behalf" or pursuant to a "formal delegation" of authority. *See id*. Indeed, if *Watson* stood for the proposition that payment by the Government to a private firm was independently sufficient to invoke the removal statute, the paid contractors in *Cabalce* and *Honolulu* would have been entitled to removal. But as noted, the Ninth Circuit explicitly rejected removal in those cases. *See Cabalce*, 797 F.3d at 729; *Honolulu*, 39 F.4th at 1109.

At the hearing, the Court expressed concern that allowing payment alone to be enough to invoke the federal-officer removal statute would be a slippery slope that would drastically expand the availability of the statute to private defendants. Defendant's counsel suggested this case is unique because the payments are being offered as part of an incentive program. In response, Plaintiff's counsel argued that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023
Title:  Michelle Valladolid v. Memorial Health Services

incentive program is not unique.  As Plaintiff's counsel aptly pointed out, concluding that the incentive payments are enough here would be akin to viewing ordinary consumers who choose to drive electric vehicles in exchange for a federal tax rebate as "acting under" federal officers.  The Court agrees that this analogy highlights the problems with Defendant's position.

But even putting aside the glaring fact that compliance with the Meaningful Use Program is voluntary, the criteria for payment under the Meaningful Use Program appear to give Defendant considerable discretion and latitude, further demonstrating that the extent of government supervision is insufficient to establish that Defendant is "acting under" a federal agency.  Under the Program, one of the criteria for payment is that the providers must raise awareness and increase usability of the systems used to give patients online access to their health records.  (Declaration of Jill Guevara ("Guevara Decl.") ¶ 8).  One of the ways Defendant chose to raise awareness and increase usability of its patient portal was by using third-party technologies such as cookies and Facebook Pixel, which is the technology at issue in the Complaint.  (*Id*. ¶ 9).  Although Defendant argues that CMS offered providers a model to follow, which itself used third-party marketers to increase engagement, nothing in Defendant's papers suggests that Defendant was ***required*** to use Facebook Pixel or cookies to actually demonstrate compliance with the Program and receive the incentive payment.  (*See* Opposition at 17).  Therefore, the considerable discretion given to Defendant in how it goes about meeting the payment criteria cuts sharply against the conclusion that it was acting under federal direction.

The *Honolulu* case crystallizes this point.  There, the Ninth Circuit considered an agreement between the Navy and a private firm that jointly ran an oil field pursuant to a binding contract.  The court held that, "[r]ather than acting for the government, [the private firm] and the Navy had reached an agreement that allowed them to coordinate their use of the oil reserve in a way that would benefit both parties."  *Honolulu*, 39 F.4th at 1109.  The Circuit rejected the defendant's argument that because the operating agreement between the parties gave the Navy "exclusive control" over the time and rate of oil exploration and the quantity and rate of production, that the Navy

---

**CIVIL MINUTES—GENERAL**                                              **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023

Title:  Michelle Valladolid v. Memorial Health Services

sufficiently supervised the defendant's duties to show that it was "acting under" the
Navy for purposes of removal.  *Id*. at 1109.  The Circuit reasoned that, under the
contract, while the "Navy could set an overall production level or define an exploration
window," the defendant "could act at its discretion."  *Id.*  Therefore, the agreement
gave the defendant "general direction—not 'unusually close' supervision."  *Id.*

Here, like in *Honolulu*, the Meaningful Use Program merely sets certain
thresholds that must be met to receive payment, but Defendant has discretion in how it
chooses to achieve those thresholds.  *See id.*  Indeed, a key goal of the Meaningful Use
Program is to incentivize private firms to innovate and develop new technologies.  (*See*
RJN, Ex. B (Federal Health Information technology Strategic Plan ("Strategic Plan"))
(published by the Office of the National Coordinator) at 7) (noting that one of the six
central goals of the Strategic Plan is to "[e]ncourage innovation").  Therefore, like in
*Honolulu*, the Government has, at most, given entities like Defendant "general
direction—not 'unusually close' supervision," which is insufficient to invoke the
statute.  *See id.*

Defendant contends that such an argument "ignores that it is the National
Coordinator, a federal officer, who is responsible for leading this effort."  (Opposition
at 17).  But whether a federal officer has some relation to the relevant program is not
the test.  The test by the removal statute's own terms is whether the firm or person is
acting ***under***, not alongside, the federal officer.

Indeed, the only case Defendant cites to suggest that it has the requisite
subordinate relationship with the Government demonstrates the flaws in Defendant's
position.  Specifically, Defendant cites *Goncalves By & Through Goncalves v. Rady
Children's Hosp. San Diego*, 865 F.3d 1237, 1242-49 (9th Cir. 2017), which involved a
private insurance carrier defendant who, pursuant to a government contract, served as
the administrator of a Federal Employee Health Benefit Act ("FEHBA") health
insurance plan.  The plaintiff was a minor covered by the FEHBA insurance plan who
filed a medical malpractice claim in state court against a third party.  *Id.* at 1242.  The
private-carrier defendant asserted a lien against the minor patient's future settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023
Title:  Michelle Valladolid v. Memorial Health Services

proceeds in the medical malpractice action, which the minor patient moved to expunge in the state court proceedings.  *Id.*  The defendant then removed the action to federal court, arguing there was jurisdiction under the federal-officer removal statute.

The *Goncalves* defendant argued it was entitled to removal because it was acting under a federal agency (the Office of Personnel management ("OPM")) when it filed the subrogation lien.  The Ninth Circuit agreed, explaining that the FEHBA "authorized [OPM] to contract with private carriers for federal employees' health insurance" and pursuant to FEHBA, "OPM has direct and extensive control over" the benefits contracts.  *Id.* at 1246.  The private carriers, such as the defendant, were paid a "negotiated service charge that the federal agency pa[id] directly."  *Id.*  As part of the contract between the private carriers and OPM, OPM "obligated the carrier[s] to make 'a reasonable effort' to pursue subrogation claims."  *Id.* at 1247.  Therefore, the Circuit reasoned that when the private carriers assert subrogation liens against federally insured patients, the proceeds of which inure to the Government, the private carrier "is not acting as an insurer so much as it is acting as a claims processors serving as the government's agent[.]"  *Id.* at 1246.

Here, Defendant appears to concede that it does ***not*** act as the Government's agent in creating its patient portal, and unlike the *Goncalves* defendant's contractual obligation to pursue subrogation, Defendant is under no contractual or even regulatory obligation to create a patient portal.  (*See* Opposition at 19, 24).  Moreover, the patient portal is used by ***Defendant's*** patients, who have no direct relationship with the National Coordinator, unlike the patient in *Goncalves*, who was a federally insured patient seeking to avoid a contractual provision of his federal insurance plan, the terms of which were largely created by OPM.  *See Goncalves,* 865 F.3d at 1242, 1246.  Here, at most, by voluntarily participating in the Meaningful Use Program the Government and Defendant are in a mutually beneficial relationship much closer to that which was insufficient to support removal in *Honolulu* than the agency relationship in *Goncalves*.  *See Honolulu*, 39 F.4th at 1109.

_____

**CIVIL MINUTES—GENERAL**                                                    **16**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023

Title:  Michelle Valladolid v. Memorial Health Services

Indeed, Defendant stresses the collaborative, as opposed to subordinate, relationship it has with the National Coordinator.  (*See, e.g.*, Opposition at 17) ("Indeed, the federal government has repeatedly emphasized the collaborative nature of the Meaningful Use Program.").  Plaintiff points out that such statements of collaboration show that Defendant was not "directed" by the federal government. (Motion at 6-14).  The Court agrees.

The relationship here is far less subordinate than a government contractor given Defendant has no binding obligations to the Government.  And while the relationship does not perfectly resemble that of a regulated entity, that does not necessarily suggest that the removal statute applies.  Instead, the relationship most closely resembles the relationship between the federal government and state governments, wherein the federal government conditions federal grants on state compliance with federal programs and policies.

At least one Circuit has considered such a relationship and readily concluded that a state agency acting pursuant to conditions of federal grants may not invoke the federal-officer removal statute.  *See Mays v. City of Flint*, Mich., 871 F.3d 437, 450 (6th Cir. 2017).  In *Mays*, city residents brought a putative class action against city officials and employees of Michigan Department of Environmental Quality ("MDEQ") alleging that MDEQ improperly allowed the city to switch its water supply.  *Id.* at 440. MDEQ argued that they were entitled to the federal-officer removal statute because they were being sued for actions that they took while acting under the direction of the EPA.  *Id.* at 441.  Specifically, MDEQ asserted that they were acting under the EPA because the EPA delegated primary enforcement authority to the MDEQ to implement the federal Safe Drinking Water Act ("SDWA") in Michigan.  *Id.*  Much like the reports and attestations regarding its involvement in the Meaningful Use Program that Defendant submits to the CMS, the SDWA required Michigan to submit to the EPA quarterly and annual reports detailing MDEQ's compliance with the EPA's regulations in order to receive the federal funds.  *See id.*  To obtain primary enforcement authority (and receive federal funds), Michigan had to "comply with standards set forth in the

CIVIL MINUTES—GENERAL                                          17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023

Title:  Michelle Valladolid v. Memorial Health Services

SDWA and its accompanying regulations" but was free to enact more stringent requirements.  *Id.* at 446.

The Sixth Circuit reasoned that *Watson* squarely held that "compliance reporting, even if detailed, is insufficient by itself to merit federal-officer removal."  *Id.* And the court emphasized that Michigan ***chose*** to enact a regulatory scheme that "essentially mirror[ed] the federal one" but was not required to do so (and could enact a scheme more stringent than the federal scheme), which demonstrated that the federal government was not exerting sufficient control over Michigan as a superior.  *Id.* at 444, 446 (noting that *Watson* interprets "acting under" to mean that the defendant seeking removal must be in a relationship with the federal government where the government is functioning as the defendant's superior").  The Sixth Circuit concluded that the MDEQ–EPA relationship was "a model of cooperative federalism, not an agency relationship" and that MDEQ's attempts to follow guidance documents issued by the EPA [] suggest that a joint relationship exists, not that the MDEQ is controlled by the EPA."  *Id.* at 447.  Therefore, the Circuit concluded that MDEQ failed to establish the type of subordinate relationship sufficient to invoke the federal-officer removal statute. *Id.* at 449.

Here too the type of collaborative relationship that the Meaningful Use Program creates between the National Coordinator and Defendant is far more analogous to the "cooperative federalism" relationship in *Mays* than it is to a principle-agent relationship.  Accordingly, Defendant has failed to establish the superior-subordinate type of relationship required to show it was "acting under" the National Coordinator in creating its patient portal and implementing Facebook Pixel.

***Carrying Out Governmental Task or Duty***:  Even if Defendant proved there was a sufficiently subordinate relationship, the ends achieved by the Meaningful Use Program still must be ends that the Government would at least arguably undertake itself in order to demonstrate that Defendant is helping carry out a Government task or duty.  *See Watson*, 551 U.S. at 153-54 ("[T]he removing defendant must show that the relevant conduct "helps officers fulfill [] basic governmental tasks" and that in the

---

**CIVIL MINUTES—GENERAL                    18**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-3007-MWF (ASx)                    Date: June 27, 2023

Title: Michelle Valladolid v. Memorial Health Services

absence of the private firm's conduct, "the Government itself would have [] to perform" such a task.).

In *UPMC* and *ProMedica* the district courts concluded that the provider defendants could invoke the removal statute because their conduct in creating the patient portals furthered a federal goal in developing a system of electronic patient health records. *See ProMedica*, 2020 WL 7705627 at **2-3 ("The aim of [the Meaningful Use Program] is to create a unified system of patient electronic health records. Because [the] [d]efendant's participation assisted the federal government in achieving that goal, [d]efendant has satisfied the 'acting under' prong."). Several district courts have disagreed, concluding that those cases "entailed an overly broad interpretation of what it means to assist a federal superior with its tasks or duties, which would permit removal to federal court in circumstances far beyond anything Congress intended." *Quinto*, 2023 WL 1448050, at *3 (internal quotations and citation omitted); *see also Crouch*, 2023 WL 3007408, at *5 (same); *Hoag*, 2023 WL 3197716, at *3 (same).

As the *Quinto* court pointed out at least two recent Ninth Circuit cases make clear that merely furthering a federal goal is not tantamount to assisting or carrying out a federal task or duty. *See Quinto*, 2023 WL 1448050, at *3. In *Saldana*, a nursing home that complied with federal directives regarding the administration of infectious-disease testing could be said to help the Government in its mission to curb a global pandemic. *Id.* (citing *Saldana*, 27 F.4th at 684-85). In *Honolulu*, an oil company that extracted offshore oil resources pursuant to a lease executed with the government could be said to promote the federal government's interests in national security. *Id.* (citing *Honolulu*, 39 F.4th at 1108). In each case, "the private entity's conduct was clearly related to a federal policy or program, but not a specific obligation or responsibility that would traditionally fall to the federal government, or that the government had otherwise assumed by statute." *Id.* For this reason, "the Ninth Circuit determined in each case that federal officer removal was improper, as the entity was not acting on the government's behalf or fulfilling a basic governmental duty." *Id.* (citing *Saldana*, 27 F.4th at 685 and *Honolulu*, 39 F.4th at 1108). This Court agrees

CIVIL MINUTES—GENERAL                                                         19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023
Title:  Michelle Valladolid v. Memorial Health Services

with the *Quinto* court, and numerous other district courts, that the same outcome is
warranted here.

Defendant argues that "the operative issue is whether a federal officer was given
a mandate to accomplish a federal goal, regardless of the means of implementing that
goal." (Opposition at 18).  Defendant cites no authority for such an argument and the
Court deems such a position as contrary to binding precedent.  As the Supreme Court
explained in *Watson*, anytime a firm or person complies with the law, such compliance
clearly helps further federal goals, but such compliance is not sufficient to constitute
***assistance*** with a federal task or duty.  *See Watson*, 551 U.S. at 152 ("We recognize
that sometimes an English speaker might say that one who complies with the law
'helps' or 'assists' governmental law enforcement," but one who merely complies with
the law is "not [] 'acting under' a federal official who is giving an order or enforcing
the law" as necessary to invoke the removal statute).

The ends being achieved by the removing defendant must be traditional or
statutory duties imposed on the Government, like creating weapons of war or
administering healthcare benefits to federal employees.  *See, e.g.*, *Winters v. Diamond
Shamrock Chemical Co*., 149 F.3d 387 (5th Cir. 1998) (manufacturing chemical
weapons); *see also Goncalves*, 865 F.3d at 1247 (administering federal health
insurance).  But here there is no traditional or statutory mandate for the Government to
create a nationwide patient portal (let alone to create a patient portal specifically for
Defendant's private patients).

Defendant tries to argue that the mandate for the National Coordinator to
"develop, maintain, and direct the implementation ***of a strategic plan*** to guide the
nationwide implementation of interoperable health information technology," amounts
to a duty for the Government to create the patient portals.  (Opposition at 21)   (internal
citation omitted) (emphasis added).  Not quite.  The statute imposes a duty on the
National Coordinator to develop a plan.  The National Coordinator carried out that
duty itself by creating a plan that involves incentivizing private firms to implement
such technology voluntarily.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-3007-MWF (ASx)                    Date:  June 27, 2023

Title:  Michelle Valladolid v. Memorial Health Services

It is true enough that where the Government offers payment for a firm to perform a task (as opposed to issuing regulations), the payment may suggest the firm is ***helping*** the Government carry out its own tasks and duties such that the relationship looks more like one of assistance than regulation.  But if the mere payment of government funds was sufficient, then every case involving a government contract with a private firm would allow the latter to invoke the removal statute, but as already explained payment alone is insufficient.  *See, e.g., Mays*, 871 F.3d at 444–45 ("[W]e conclude that the receipt of federal funding alone cannot establish a delegation of legal authority[.]").

And the apparent reason that the Government has chosen to utilize incentive payments as opposed to regulations appears to be due to the state of technology.  As Defendant points out, eventually the incentives will be phased out and turn into penalties for non-compliance.  (*See* Opposition at 11).  In other words, the payments are a means of encouraging innovation and adoption of technology, ***not*** compensation for carrying out tasks and services for the Government that it would otherwise be charged with doing.  *See* Medicare and Medicaid Programs; Electronic Health Record Incentive Program, 75 F.R. 44314-01 ("As the purpose of these incentives is to encourage the adoption and meaningful use of certified EHR technology[.]"); (RJN, Ex. B (Strategic Plan) at 7) (noting that one of the six central goals of the Strategic Plan is to "[e]ncourage innovation").  Therefore, unlike in *Goncalves*, where OPM paid the defendant to administrator a "negotiated service charge," here the payment to Defendant is not a means of compensating Defendant for its services on behalf of the Government.

Therefore, Defendant has failed to demonstrate that it is carrying out or assisting the Government with a traditional duty or task that the National Coordinator would otherwise do itself.

Accordingly, the Motion is **GRANTED** as none of the relevant factors appear to suggest that Defendant is acting under a federal officer or agency as required to invoke the federal-officer removal statute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 23-3007-MWF (ASx)**                    **Date:** **June 27, 2023**
Title:  Michelle Valladolid v. Memorial Health Services

## IV.    **CONCLUSION**

The Motion to Remand is **GRANTED** and the Court directs the Clerk to **REMAND** this action to the Los Angeles Superior Court.

IT IS SO ORDERED.